United States Court of Appeals
For The Eighth Circuit

_____

No. 99-2362
_____

Bob Mittlestedt,                             *
                                             *
        Appellant,                           *
                                             *
    v.                                       *        Appeal from the United States
                                             *        District Court for the
Kenneth S. Apfel,                            *        District of North Dakota
Commissioner of Social Security,             *
                                             *
        Appellee.                            *


_____

Submitted:  February 14, 2000

Filed: March 2, 2000
_____

Before BEAM, J. GIBSON Circuit Judges, and PRATT[1], District Judge.

PRATT, District Judge

        Bob Mittlestedt  appeals from the judgment of the United States District Court
for the District of North Dakota[2] which upheld the final decision of the Commissioner

_____

1. The Hon. Robert W. Pratt, United States District Judge for the Southern District
of Iowa, sitting by designation.

2. The Hon. Patrick A. Conmy, United States District Judge for the District of North
Dakota.

that he is no longer entitled to Social Security benefits based on disability because alcoholism is a contributing factor material to the determination of his disability.

Mittelstedt filed an application for disability benefits in July, 1984. AR at 28. After a hearing, an Administrative Law Judge (ALJ) issued a Notice of Decision - Denial on July 23, 1985. In this decision, the ALJ found that Mittelstedt suffers from mitral valve prolapse, a history of asthmatic bronchitis and alcoholism. The ALJ found that Mittelstedt is unable to do his past work, but that he has the residual functional capacity for light work. Relying on the testimony of a vocational expert, the ALJ found that Mittelstedt retained transferable skills from his past work and that he was, therefore, not disabled. In spite of the fact that alcoholism was found to be a severe impairment, the ALJ wrote: "Claimant's alcoholism has not prevented him from working in the past and his drinking is not so chronic as to be disabling. This record does not show chronic involitional alcoholism which is disabling."

On June 16, 1986, the Social Security Administration, apparently on its own motion, mailed a notice to Mittelstedt which informed him that he had been approved for benefits. Addendum to Appellant's Brief.

Public L. No. 104-121, 110 Stat. 847 (relevant portions codified in scattered sections of 42 U.S.C.) provides, in part, that benefits are eliminated when disability is due to alcoholism and/or drug abuse. *See Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998). Accordingly, Mittelstedt was notified that his benefits would cease January 1, 1997, due to the fact that his disability was based upon a substance addiction disorder. The form on which Mittelstedt requested reconsideration of the determination that his benefits would cease, indicates that his benefits were being sent to the Dakota Center for Independent Living which was his representative payee. AR at 97.

Mittelstedt appeared with counsel before a second ALJ on March 25, 1997. AR at 52-95. In his decision of June 23, 1997, the ALJ found that because alcoholism is

a contributing factor material to a finding of disability, Mittelstedt is no longer entitled to receive disability insurance benefits.  AR at 42.

Mittelstedt completed a Disability Report (Form SSA-3368) on August 6, 1996, on which he stated that his disabling conditions were "heart condition and epileptic seizures."  AR at 106.  Mittelstedt suffered two grand mal seizures, one in April, 1993, and a second in August, 1993.  AR at 139.  A medical report dated March 16, 1996, states that he had no seizures since August of 1993, and that he had no problems with the medication used to control the seizures.  AR at 128.  A CT scan of Mittelstedt's brain on July 26, 1995 demonstrated no abnormalities.  AR at 133.

Mittelstedt was seen for a consultative examination by Ronald D. Tello, M.D. on October 18, 1996.  AR at 144-55.  Mittelstedt told Dr. Tello that he received benefits due to alcoholism.  He told Dr. Tello that he is able to walk four blocks after which he must stop and rest due to shortness of breath and occasional chest pain.  AR at 144.  Mittelstedt reported that he had been told by a doctor that he has asthma, and that the doctor prescribed an Alupent inhaler.  Dr. Tello wrote that in 1993, Mittelstedt saw a cardiologist who told him that he had atypical chest pain and that an echocardiogram showed mild mitral valve prolapse.  Regarding alcohol usage, Dr. Tello wrote:

> In 1975, he began drinking and he got up to about  12 cans of beer a day.  He had three DUIs and underwent treatment for alcoholism in 1984 at Fort Mead and a repeat treatment in 1985 at Grand Forks.  He says he still drinks an occasional can of beer.

When Dr. Tello asked Mittelstedt why he was disabled at that time, he said it was due to shortness of breath and back pain which began after an automobile accident[3] as well as a motorcycle accident in which he was involved in 1963.  "As far as he can recall,

---

3.  Pages 160 to 171, which are almost unreadable, appear to be the accident reports.

he has never had any evaluation of his back as far as x-rays or a CT scan." AR at 145. After a physical examination – including an EKG which was normal and did not show any ischemic changes – Dr. Tello diagnosed: 1) History of alcoholism; 2) Moderate obstructive ventilatory defect; 3) Chronic low back pain; 4) Mitral valve prolapse; 5) Seizure disorder; and, 6) Chest pain. AR at 146. Concluding his report, Dr. Tello wrote:

> Specific questions that the disability analyst wanted answers regarding any evidence for end organ damage secondary to alcoholism. I could not find any end organ damage secondary to the alcoholism; although, a chemistry profile for liver enzymes was not obtained and this may be helpful. His behavior, appearance, and cooperation during the interview and examination were all normal and he was neat and very cooperative. I did advise him that he should quit smoking. It's unclear whether he has pure asthma with some developing COPD, but I suspect he has both. Currently he is not on very good treatment protocol for his asthma; although if he does continue to smoke, it would be difficult to try and control. It is also unclear whether his shortness of breath is due to his lung disease or if he does indeed have underlying heart disease. It may be helpful to repeat the stress test.

AR at 147.

There is a letter in the record dated June 25, 1985, from Ron Borgerding, Resident Living Supervisor II at Grafton State School, which states that Mittelstedt was working at the school beginning April 16, 1985. The author wrote: "It is very difficult to evaluate his attendance record due to the fact he is serving time for a recent DWI. He is allowed out long enough to work but must return after his shift is done." AR at 178.

On January 31, 1969, Mittelstedt was awarded $1,147.50 from worker's compensation in the State of Washington as a result of a 10% loss of function of the left arm below the elbow.  AR at 174.

At the time of the hearing on March 25, 1997, Mittelstedt was 55 years old.  AR at 55.  Mittelstedt testified that part of the reason that he began receiving disability was his problem with alcohol.  AR at 58.  Mittelstedt said that he carries nitroglycerin for his heart, but that it has been years since he used any.  AR at 63-64.  Mittelstedt testified that there were times when he lost control of his bladder and bowels and soiled himself, but when asked how many times this happened in a typical month, he did not answer the question.  AR at 65.  When he was asked if there was pain associated with any of his conditions, or if he suffered any pain on a daily basis, Mittelstedt replied in the negative.  AR at 65-66.  Mittelstedt testified that he doesn't have any social life because all of his old friends are found in bars and that he is unable to drink because of his medication.  AR at 67.  Mittlestedt testified that he suffered from depression but not "until I started having problems with Social Security."  AR at 69.  Mittlestedt described a job he had for six or seven months as a personal care attendant at "Grafton School," and said that he lost the job due to losing his driving privileges because of a drunk driving charge.  AR at 70-71.  When he was asked by the ALJ how long it had been since he drank, Mittlestedt responded:  "I mean I haven't had a drink now for probably 3, 4 weeks."  AR at 76.

In his decision of June 23, 1997, following the familiar five step sequential evaluation process, the ALJ found that Mittlestedt's only severe impairment is alcoholism.  AR at 41.  The ALJ held that section 105 of Public Law 104-121 mandates that, since alcoholism is a contributing factor material to a finding of disability, as of January 1, 1997, Mittlestedt was no longer entitled to disability insurance benefits under Title II of the Social Security Act.  AR at 42.

## DISCUSSION

"Our review is limited to whether the Commissioner's

denial of benefits is supported by substantial evidence in the record as a whole." *Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir. 1998) (citations omitted). Substantial evidence exists if a reasonable mind would find such evidence adequate. *Id*. A reviewing court "may not reverse merely because substantial evidence would [also support] an opposite decision." *Id.* (Internal quotations and citations omitted).

*Jackson v. Apfel,* 162 F.*3*d 533, 536-37 (8th Cir. 1998). In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Willcutts v. Apfel,*143 F.3d 1134, 1136 (8th Cir. 1998) quoting *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir. 1975).

In *Jackson,* 162 F.3d at 537, the Court explained that the Contract with America Advancement Act of 1996, Pub.L. 104-121, 110 Stat. 847 (relevant portions codified in scattered sections of 42 U.S.C.), in pertinent part, eliminates benefits for disabilities due to alcoholism and/or drug abuse. The Commissioner's regulations, at 20 C.F.R. § 404.1535 implement the statute. This regulation states:

> (a) *General*. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.* (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if

you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i)  If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii)  If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

The first question, then, is whether there is medical evidence of alcoholism. Although the record of this case is somewhat sketchy, we hold that there is sufficient medical evidence of alcoholism to proceed with the regulatory process.  It does not appear that any of the medical records available to the first ALJ, nor the records available to the adjudicator who made the award of benefits, were available  to the second ALJ.  Nor, is it clear to the Court why Mittlestedt was awarded benefits in the first place, although the Commissioner points to a diagnostic code which he states indicates alcoholism was the basis of the award.  *See* AR at 96.  The Commissioner's argument is supported by the fact that the same form lists the Dakota Center for Independent Living as the representative payee for Mittelstedt's benefits.  *Id.* Furthermore, Mittlestedt was aware that his claim was being reviewed pursuant to the alcoholism statute.  *See* AR at 97 (form on which Mittlestedt requested reconsideration of the cessation of his benefits due to alcoholism); AR at 50 (Addendum To Hearing Notice which stated that the specific issue to be decided at the hearing was whether or not drug addiction and/or alcoholism is a contributing factor material to the determination of disability); and, AR at 93 (ALJ makes clear to Mittlestedt's counsel that the case was not a cessation case under 20 C.F.R. § 1594, but under the provisions of Public Law 104).

Dr. Tello wrote that Mittelstedt began drinking in 1975, that he had undergone

alcohol treatment in 1984, that he had three DUIs, and that he still drinks an occasional can of beer. Dr. Tello diagnosed a history of alcoholism. Dr. Tello's diagnosis is supported by the evidence from Ron Borgerding, Mittelstedt's supervisor at Grafton State School, that Mittelstedt was incarcerated for DWI, and by Mittelstedt's testimony that he lost that job due to DWI. The diagnosis of alcoholism is supported by Mittelstedt's testimony that he does not socialize because all of his old friends gather in bars. The diagnosis is further supported by Mittelstedt's admission to the ALJ that he is still drinking.

It is unfortunate that the record does not contain more medical evidence regarding the reason why Mittelstedt was awarded benefits in the first place. Nevertheless, for all of the above stated reasons, the Court is satisfied that alcoholism was at least one of the reasons, if not the primary reason, why Mittelstedt was awarded disability benefits.

The next question is whether or not Mittelstedt would be found disabled even if he ceased using alcohol. The ALJ found, and the record supports, that but for alcoholism, he has no severe impairments. The Court finds no medical evidence in this record to refute the ALJ's finding. Mittelstedt's seizure disorder, as well as his heart and respiratory conditions are controlled by medication. "Impairments that are controllable or amenable to treatment do not support a finding of total disability." *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999). Likewise, the lack of any medically necessary restrictions in the record supports the ALJ's finding that Mittlestedt's impairments are not severe. *Melton v. Apfel,* 181 F.3d 939, 941 (8th Cir. 1999) (testimony undermined by, among other reasons, the lack of significant restrictions placed on his activities by his doctors). The record contains no medical evidence whatsoever to support Mittlestedt's testimony regarding side effects of his medication or other complaints.

It is Mittlestedt's burden to establish his severe impairments at step two of the sequential evaluation. *Wilcutts v. Apfel*, 143 F.3d at 1137 (burden of proof shifts to the Commissioner at step five of the sequential evaluation). Furthermore, the Fifth Circuit

has held that it is the claimant who bears the burden of proving that drug or alcohol addiction is not a contributing factor material to the disability. *Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir. 1999). In this case, Mittlestedt, who was represented by counsel, made no effort whatsoever to provide any medical evidence to support his claim of disability or in support of his contention that alcoholism is not a contributing factor material to his disability. He did not even request that the ALJ order additional consultative examinations of any kind.

Mittlestedt argues that the ALJ should have evaluated the case pursuant to 20 C.F.R. § 404.1594. That regulation governs the procedures for evaluating a continuing disability review. Under those circumstances, a claim must be reviewed periodically to determine if medical improvement has resulted in the claimant's ability to work again. Although, under that procedure, it must be determined if there has been any medical improvement related to the individual's ability to work, the Social Security Disability Benefits Reform Act of 1984 (1984 Act), Pub.L. No. 98-460, 98 Stat. 1794 (1984), made it clear that the determination was to be made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that the individual was previously found to be disabled. *See Polaski v. Heckler,* 751 F.2d 943, 946 (8th Cir. 1984). In this case, the Commissioner reviewed the case pursuant to a congressional mandate to terminate benefits for those who were receiving them because of alcoholism or drug addiction.

For all of the foregoing reasons, the judgment of the District Court is hereby affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT